# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

JONATHON D. MONROE,

                                 :

        Petitioner,                      Case No. 2:07-cv-258

                                 :           District Judge Edmund A. Sargus, Jr.

    -vs-                                 Magistrate Judge Michael R. Merz

WARDEN, Ohio State Penitentiary,

                                 :

        Respondent.

---

# DECISION AND ORDER GRANTING IN PART AND DENYING IN PART PETITIONER'S MOTION FOR DISCOVERY AND RESPONDENT'S REQUEST FOR RECIPROCAL DISCOVERY

---

This capital habeas corpus case is before the Court on Petitioner's Motion for Discovery (Doc. No. 77). The Warden opposes the Motion ("Memo in Opp.," Doc. No. 78) and Monroe has filed a Reply in Support ("Reply," Doc. No. 79). A motion for discovery in a habeas corpus case is non-dispositive and thus amenable to a Magistrate Judge ruling instead of a recommendation. 28 U.S.C. § 636(b).

Monroe seeks discovery as to four claims made in his Petition, pled as follows:

> **Ground Five:** THE STATE'S FAILURE TO PROVIDE MONROE WITH MATERIAL EXCULPATORY EVIDENCE PRIOR TO TRIAL DENIED HIM DUE PROCESS AND A FUNDAMENTALLY FAIR TRIAL UNDER THE FIFTH, SIXTH, EIGHTH, AND FOURTEENTH AMENDMENTS.

(Petition, Doc. No. 10, PageID 83.)

> **Ground Eight:** TRIAL COUNSELS' PERFORMANCE

THROUGHOUT THE TRIAL PREPARATION, THE VOIR DIRE, THE PRETRIAL PROCESS AND THROUGHOUT THE TRIAL FELL FAR BELOW THE PREVAILING PROFESSIONAL NORMS, THUS DEPRIVING MONROE OF THE EFFECTIVE ASSISTANCE OF COUNSEL.

(Petition, Doc. No. 10, PageID 94.)

**Ground Nine:** COUNSEL'S PERFORMANCE AT AND IN PREPARING FOR THE PENALTY PHASE OF MONROE'S CAPITAL TRIAL FELL FAR BELOW THE PREVAILING PROFESSIONAL NORMS, AND DEPRIVED MONROE OF THE EFFECTIVE ASSISTANCE OF COUNSEL AT THE PENALTY PHASE IN VIOLATION OF THE FIFTH, SIXTH, EIGHTH, AND FOURTEENTH AMENDMENTS.

(Petition, Doc. No. 10, PageID 110.)

**Ground Ten:** MONROE WAS DENIED THE EFFECTIVE ASSISTANCE OF APPELLATE COUNSEL ON HIS SOLE APPEAL OF RIGHT TO THE SUPREME COURT OF OHIO IN VIOLATION OF THE FIFTH, SIXTH, EIGHTH, AND FOURTEENTH AMENDMENTS.

(Petition, Doc. No. 10, PageID 140.)

**General Standard for Habeas Corpus Discovery**

A habeas petitioner is not entitled to discovery as a matter of course, but only upon a fact-specific showing of good cause and in the Court's exercise of discretion. Rule 6(a), Rules Governing §2254 Cases; *Bracy v. Gramley*, 520 U.S. 899 (1997); *Harris v. Nelson*, 394 U.S. 286 (1969); *Byrd v. Collins*, 209 F.3d 486, 515-16 (6th Cir. 2000). Before determining whether discovery is warranted, the Court must first identify the essential elements of the claim on which

discovery is sought. *Bracy*, 520 U.S. at 904, *citing United States v. Armstrong*, 517 U.S. 456, 468 (1996). The burden of demonstrating the materiality of the information requested is on the moving party. *Stanford v. Parker*, 266 F.3d 442, 460 (6th Cir. 2001), *cert. denied,* 537 U.S. 831 (2002), *citing Murphy v. Johnson,* 205 F. 3rd 809, 813-15 (5th Cir. 2000). "Even in a death penalty case, 'bald assertions and conclusory allegations do not provide sufficient ground to warrant requiring the state to respond to discovery or require an evidentiary hearing.'" *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003), *cert. denied,* 543 U.S. 842 (2004), *quoting Stanford*, 266 F.3d at 460. Rule 6 does not "sanction fishing expeditions based on a petitioner's conclusory allegations." *Williams v. Bagley,* 380 F.3d 932, 974, (6th Cir. 2004), *cert. denied,* 544 U.S. 1003 (2005), *citing Rector v. Johnson*, 120 F.3d 551, 562 (5th Cir. 1997); *see also Stanford*, 266 F.3d at 460. "Conclusory allegations are not enough to warrant discovery under [Rule 6]; the petitioner must set forth specific allegations of fact." *Williams,* 380 F.3d at 974, *citing Ward v. Whitley*, 21 F.3d 1355, 1367 (5th Cir. 1994).

In conducting the analysis that led to granting discovery in *Bracy v. Gramley, supra*, the Supreme Court provided at least part of the template which lower courts should follow in deciding discovery motions in habeas corpus cases.

First of all, it identified the claims to which the sought discovery in that case related and specifically determined whether they were claims upon which habeas corpus relief could be granted at all. Federal habeas corpus is, of course, available only to correct wrongs of constitutional dimension. 28 U.S.C. §2254(a); *Smith v. Phillips*, 455 U.S. 209 (1982), *Barclay v. Florida,* 463 U.S. 939 (1983). In *Bracy* the claim was that the trial judge was biased in favor of other defendants who had bribed him and therefore had a motive to be harsh with those, like the

petitioner, who had not. The Supreme Court distinguished this kind of claim of judicial

disqualification from other non-constitutional claims which would not be cognizable in habeas

corpus. This part of the *Bracy* analysis makes it clear that discovery should not be authorized on

allegations in a habeas corpus petition which do not state a claim upon which habeas corpus relief

can be granted.

Secondly, the Supreme Court identified circumstances which corroborated Bracy's theory

of relief and request for discovery:

> As just noted above, petitioner's attorney at trial was a former
> associate of Maloney's, App. 51, and Maloney [the corrupt trial
> judge] appointed him to defend this case in June 1981. The
> lawyer announced that he was ready for trial just a few weeks later.
> He did not request additional time to prepare penalty-phase
> evidence in this death penalty case even when the State announced
> at the outset that, if petitioner were convicted, it would introduce
> petitioner's then-pending Arizona murder charges as evidence in
> aggravation. Tr. of Oral Arg. 43. At oral argument before this
> Court, counsel for petitioner suggested, given that at least one of
> Maloney's former law associates--Robert McGee--was corrupt and
> involved in bribery, see supra, at 8, that petitioner's trial lawyer
> might have been appointed with the understanding that he would not
> object to, or interfere with, a prompt trial, so that petitioner's case
> could be tried before, and camouflage the bribe negotiations in, the
> Chow murder case. Tr. of Oral Arg. 17-18, 43-44. [FN11] This
> is, of course, only a theory at this point; it is not supported by any
> solid evidence of petitioner's trial lawyer's participation in any such
> plan. It is true, however, that McGee was corrupt and that
> petitioner's trial coincided with bribe negotiations in the Chow case
> and closely followed the Rosario murder case, which was also fixed.

520 U.S. 907-908.

> We emphasize, though, that petitioner supports his discovery
> request by pointing not only to Maloney's conviction for bribe
> taking in other cases, but also to additional evidence, discussed
> above, that lends support to his claim that Maloney was actually
> biased in petitioner's own case. That is, he presents "specific
> allegations" that his trial attorney, a former associate of Maloney's

> in a law practice that was familiar and comfortable with corruption, may have agreed to take this capital case to trial quickly so that petitioner's conviction would deflect any suspicion the rigged Rosario and Chow cases might attract.

*Id.* at 909. The quoted "specific allegations" language is from *Harris v. Nelson, supra,* and demonstrates that the Supreme Court in both cases was adverting not to the **claim** language in the habeas petition, but to specific **evidence** obtained outside the discovery process and presented in support of a motion for discovery, which corroborates the claimed constitutional violation.

Other parts of habeas corpus procedural jurisprudence, although not relevant to the particular decisions in *Harris* and *Bracy*, also should inform a district court's exercise of its discretion in granting discovery under Habeas Rule 6. The purpose of discovery in any case is ultimately to gather evidence which will be put before the court in deciding the case on the merits. In order to obtain an evidentiary hearing in federal court on a claim on which he has not fully developed the factual basis in state court, a habeas corpus petitioner must show cause and prejudice under *Wainwright v. Sykes*, 433 U.S. 72 (1977). *Keeney v. Tamayo-Reyes*, 504 U.S. 1 (1992). Logically, there is no good reason to gather evidence which one will not be permitted to present because one cannot satisfy the *Keeney* standard. Therefore, if there are items of evidence sought in discovery which could have been obtained and presented during the state court process but were not, a petitioner should make the required *Keeney* showing before being authorized to conduct discovery to obtain the evidence.

*Id.*, pp. 5-7.

Respondent argues for further limitations on discovery based on *Cullen v. Pinholster,* 563 U.S. ___, 131 S.Ct. 1388 (2011), where the Supreme Court held that a federal court's review of a state court decision under 28 U.S.C. § 2254(d)(1) is strictly limited to "review of the state court

record," and that evidence acquired through use of an evidentiary hearing may not be considered in deciding that question. *Id.* at 1399. (Memo in Opp., Doc. No. 78, PageID 5611-5613.) Monroe replies that *Pinholster* does not impact federal habeas discovery at all for various reasons (Reply, Doc. No. 79, PageID 5624-5633). He notes that the *Pinholster* majority accepted the distinction Justice Sotomayor made in dissent between a claim decided on the merits in state court and one which had become essentially a new claim because of new evidence developed by the time of federal consideration. *Id.* at 5626. He also notes the *Pinholster* majority did not comment on Justice Sotomayor's statement that "the majority does not intend to suggest that review is limited to the state-court record when a petitioner's inability to develop the facts supporting his claim was the fault of the state court itself," *Id.*, citing Justice Sotomayor's dissent at 131 S. Ct. 1417 and relying on *Winston v. Pearson*, 683 F.3d 489 (4th Cir. 2012).

*Winston* is not dispositive, apart from not being Sixth Circuit precedent, because the Fourth Circuit, under the law of the case doctrine, declined to change a ruling which had come down before *Pinholster* and *Harrington v. Richter*, 131 S. Ct. 770 (2011). *Id.* at 499-502. The Fourth Circuit noted that both Supreme Court cases had not spent much time discussing the § 2254(d)(1) "adjudicated on the merits" predicate and noted that Winston's claim had not been adjudicated on the merits because the evidence on which he relied had been excluded from state court proceedings. This judge certainly agrees, however, that the question whether a claim was adjudicated on the merits in state court is an analytically separate question from what a federal court may do about discovery, expansion of the record, or an evidentiary hearing **after** it decides that a claim was not adjudicated on the merits in state court.

This judge does not agree, however, with the proposition that Habeas Rule 6 creates a

discovery mechanism intended to allow fact gathering in federal court on habeas claims which were not diligently pursued in the state court system. Rather, discovery is intended to be ancillary to adjudication of habeas claims in federal court. The *Pinholster* majority at least implicitly recognizes that it will sometimes happen that evidence will be found, whether through formal discovery or otherwise, which is relevant to a habeas claim and which must first be presented to a state court for evaluation. But that is a far cry authorizing federal habeas discovery as a free-standing mechanism for gathering evidence.

## Ground Five:   Failure to Disclose *Brady* Material

In support of his Fifth Ground for Relief, Petitioner seeks the following discovery:

1. The right to issue subpoenas *duces tecum* to the Franklin County Prosecutor's Office, the Franklin County Sheriff's Department, the Columbus Police Department, and the Ohio Bureau of Criminal Investigation for any and all information in their files which pertain to the collection, sampling, preservation, testing, and maintenance of DNA samples taken from the crime scene and from Monroe and his co-defendant Shannon Boyd;

2. The right to issue subpoenas *duces tecum* to the Franklin County Prosecutor's Office and the United States Attorney's Office for the Southern District of Ohio, Columbus Division (where DeVillers was employed as a federal prosecutor at the time he testified against Monroe) for any and all information in their files concerning the plea agreement offered to Monroe's codefendant, Shannon Boyd; meetings and communication between the trial prosecutors and DeVillers regarding the plea agreement; and records of DeVillers' testimony at trial;

3. The right to depose the trial prosecutors regarding the DNA and DeVillers issues described in paragraphs one and two; and

4. The right to depose David DeVillers regarding the plea agreement with codefendant Shannon Boyd, his communication

with Monroe's trial prosecutors, and his testimony at trial.

(Motion, Doc. No. 77, PageID 5597-5598.)

**The DNA Claim**

Applying the *Bracy* standard, the Court must first "identify the essential elements of the claim on which discovery is sought." The claim as pled in the Petition mentions nothing about DNA. In the Motion, however, Monroe asserts that

> First and foremost, the state untruthfully represented in pretrial proceedings that there remained an insufficient sample for Monroe's expert to conduct independent DNA testing, only to come forward with the actual sample during Monroe's trial. PAGEID # 3771, 3975. The untimely disclosure of the DNA sample had a critical and detrimental impact on Monroe's defense; the charges against Monroe arose six years after the crime as a result of an alleged DNA match through the state database, and the DNA results were the only way in which Monroe was initially connected to the offense. *Monroe*, 105 Ohio St.3d at 386, 827 N.E.2d at 291. As a result, the prosecution's late disclosure of the DNA sample is a strong indication that the state did not completely understand and adhere to *Brady* and *Kyles*. [Footnote omitted.] The state also failed to inform Monroe's defense attorneys that former prosecutor David DeVillers would be testifying as to the plea bargain offered to Monroe's co-defendant, Shannon Boyd. This too raises a concern that the state failed to comply with *Brady* and *Kyles*.

(Motion, Doc. No. 77, PageID 5596-5597.)

What appears at PageID 3771 is not a statement by the prosecutor. Instead, this is part of an argument made by Mr. Janes, one of Monroe's trial attorneys (See Trial Tr., beginning at PageID 3767, apparently referring to a "blood sample that was found outside the apartment on one of the panels of the outside door." PageID 3770). Mr. Janes is arguing that Monroe is entitled to independent testing of the blood sample which provided the DNA to identify him, but that it

cannot be done because the sample had been destroyed.

The second reference given by Petitioner's counsel to PageID 3975 refers to colloquy among the court and counsel for both parties on the afternoon of July 30, 2002, after the beginning of voir dire.

> Mr. Janes: Your Honor, before the jurors come in, this morning Mr. Lowe [one of the prosecutor's] advised Mr. Rigg and myself, and it has been our understanding throughout the preparation of this defense that a sample of blood –
>
> The Court: I understand that the state has found some blood?
>
> Mr. Janes: I was advised that you did not know that
>
> The Court: I just found out as I was coming in the courtroom.
>
> Mr. Janes: now, the State of Ohio, and as I understand it, and I have been advised about this from the prosecutor's office, and to what has been referred to as a sample that has been exhausted in testing, and now, Your Honor, I understand that it has not been exhausted or destroyed or assumed [sic].
>
> The Court: are you saying that there is a sample that is available? Is that what you're saying?
>
> Mr. Lowe: Your Honor, if I may. I spoke to BCI this morning and based on the Columbus Police Department person as well as the detective through this the court has become aware, or the court was under the impression that the sample was consumed.
>
> When I spoke to BCI this morning, and when I was talking about questions that I would be asking her, I related to her to explain why the sample was consumed, that that issue was brought up by the defense, and then she indicated to me that she thought she had sent some back to CPD, and I said to her that I did not understand that since I thought it was all destroyed or consumed, and she said that she thought that there was still some left.
>
> So, Your Honor, what we're trying to do is we're trying to have that brought over to see if there's enough to test or not.

> Your Honor, at that point I told Mr. Janes and Mr. Rigg that there may be an issue concerning that and maybe they could get an expert to look at what we have if there is anything, we can go to the property room and see if there's enough to test or not, but I just don't know at this time; and obviously the information I had was not correct, and I apologize for that, but that's what I was told on three separate times that it was destroyed, so, Your Honor, I'm still not 100 percent positive, and you know, Your Honor, I'm not a DNA expert, so maybe they need to have an expert test that since it's been requested and since the defense was given erroneous information.

(Trial Tr., PageID 3975-3977.)

During the colloquy, counsel agreed to stay away from DNA matters in opening. Counsel were to meet thereafter and get additional testing done if it could be done. *Id.* at PageID 3978. Petitioner's present counsel give this Court no further record references on how this matter of the possibly preserved sample turned out, although they claim this late disclosure "had a critical and detrimental impact on Monroe's defense." Certainly if the untimely revelation had a negative impact on the case, that issue was available for direct appeal, but was never raised as a proposition of law before the Ohio Supreme Court. *See State v. Monroe*, 105 Ohio St. 3d 384 (2005).

There are three essential components of a true *Brady* violation: the evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued. *Strickler v. Greene,* 527 U.S. 263 (1999).

> In *Brady*, this Court held "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S., at 87, 83 S.Ct. 1194. We have since held that the duty to disclose such evidence is applicable even though there has been no request by the accused, *United States v. Agurs,* 427 U.S. 97, 107, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976), and that the duty encompasses impeachment evidence as well as exculpatory evidence, *United*

> *States v. Bagley*, 473 U.S. 667, 676, 105 S.Ct. 3375, 87 L.Ed.2d 481
> (1985). Such evidence is material "if there is a reasonable
> probability that, had the evidence been disclosed to the defense, the
> result of the proceeding would have been different." Id., at 682, 105
> S.Ct. 3375; see also *Kyles v. Whitley*, 514 U.S. 419, 433-434, 115
> S.Ct. 1555, 131 L.Ed.2d 490 (1995). Moreover, the rule
> encompasses evidence "known only to police investigators and not
> to the prosecutor." Id., at 438, 115 S.Ct. 1555. In order to comply
> with *Brady*, therefore, "the individual prosecutor has a duty to learn
> of any favorable evidence known to the others acting on the
> government's behalf in this case, including the police." *Kyles*, 514
> U.S., at 437, 115 S.Ct. 1555.
>
> These cases, together with earlier cases condemning the knowing
> use of perjured testimony, illustrate the special role played by the
> American prosecutor in the search for truth in criminal trials. Within
> the federal system, for example, we have said that the United States
> Attorney is "the representative not of an ordinary party to a
> controversy, but of a sovereignty whose obligation to govern
> impartially is as compelling as its obligation to govern at all; and
> whose interest, therefore, in a criminal prosecution is not that it shall
> win a case, but that justice shall be done." *Berger v. United States*,
> 295 U.S. 78, 88, 55 S.Ct. 629, 79 L.Ed. 1314 (1935).

*Strickler*, 527 U.S. 280-81.   *Accord, Jamison v. Collins*, 291 F.3d 380 (6th Cir. 2002).     No

B*rady* claim exists for adverse impact on trial preparation; "only the effect on the trial's outcome

matters." *Webb. v. Mitchell*, 586 F.3d 383 (6th Cir. 2009), quoting *Wilson v. Parker*, 515 F.3d 682,

702 (6th Cir. 2008).

So far as the record references cited by Petitioner go, the assistant county prosecutor did

know of his *Brady-Kyles* duty to disclose evidence, he was told three times by the relevant

evidence custodian that the sample had been consumed in testing, as soon as he found out to the

contrary, he advised the court and defense counsel and steps were taken to avoid any prejudice.

Monroe has not shown that there was any exculpatory DNA evidence at any point in time or that he

was in any way prejudiced by the revelation that there might have been some sample available to

test as of the beginning of trial.

Monroe's trial counsel found out whatever they found out about the possible testable sample and did whatever they did about it (again, the Court has been given no record references). Whatever they did, neither the results of any additional testing nor the delay in performing the testing were raised as issues in the Ohio Supreme Court.

On this foundation, Monroe's counsel erect a claim that there might be something exculpatory not yet revealed in all of the files they seek to subpoena. At this point that claim is completely speculative and the request for discovery regarding the *Brady* DNA claim is denied on that basis.

**The DeVillers Claim**

Monroe also seeks to subpoena records from the Franklin County Prosecutor and the United States Attorney for the Southern District of Ohio for any information in their files concerning the plea agreement the State made with co-defendant Shannon Boyd. Then he seeks to depose the trial prosecutors and DeVillers about their communications among themselves and with Boyd.

The only stated basis for this claim is that "[t]he state also failed to inform Monroe's defense attorneys that former prosecutor David DeVillers would be testifying as to the plea bargain offered to Monroe's co-defendant, Shannon Boyd. This too raises a concern that the state failed to comply with *Brady* and *Kyles*." (Motion, Doc. 77, PageID 5597.)

Monroe offers no suggestion as to why further inquiry would produce exculpatory or

impeaching evidence. As the Ohio Supreme Court found, the State offered DeVillers to rebut any claim that the State had manufactured evidence or made a "secret deal" with Boyd. *Monroe*, 105 Ohio St. 3d at 399. Perhaps what Monroe's counsel are hinting at is their belief that if they could go through the files of the trial prosecutors, they might find further information with which they could have impeached DeVillers or Boyd. But that again is purely speculative.

No claim was made at trial or on direct appeal that the defense was sufficiently surprised by DeVillers' testimony as to require a continuance to prepare. Instead, the claims were that he should not have been permitted to testify in the State's case in chief, that he had been permitted to vouch for Boyd's credibility, and that he had given expert testimony without being qualified as an expert. *Monroe*, 105 Ohio St. 3d at 398-400. None of those claims sounds at all like a *Brady* claim.

Finally, the only connection Monroe suggests with the United States Attorney for the Southern District is that DeVillers, who had negotiated with Boyd while a county prosecutor, had become employed by the U. S. Attorney by the time of Monroe's trial. That provides no reasonable basis to allow counsel to rummage in the United States Attorney's files or to make that office do a file search.

Therefore, the request for discovery regarding the *Brady* DeVillers claim is denied as speculative.


**Failure to Plead the Brady Claims on Which Discovery is Sought**


An additional deficiency applies to both Brady claims on which Monroe seeks discovery:

neither of them is pled in the Petition.

The entirety of Monroe's Fifth Ground for Relief as pled in the Petition reads as follows:

140 ) V. THE STATE'S FAILURE TO PROVIDE MONROE WITH MATERIAL EXCULPATORY EVIDENCE PRIOR TO TRIAL DENIED HIM DUE PROCESS AND A FUNDAMENTALLY FAIR TRIAL UNDER THE FIFTH, SIXTH, EIGHTH, AND FOURTEENTH AMENDMENTS.

141) The state failed to disclose material exculpatory and mitigating evidence to Jonathon Monroe.

142 ) Prior to trial, defense counsel filed numerous discovery motions specifically requesting that law enforcement officials advise the prosecutor of information that was gained during the investigation.

143) The state failed to disclose additional, material exculpatory and/or mitigating evidence.

144) The state is obligated to disclose to the defense any information in the state's control that is favorable to the defense on the issue of either guilt or punishment and includes impeaching evidence.

145) Where the state has withheld favorable evidence from the defense, then the reviewing court must decide if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. *Kyles v. Whitley*, 514 U.S. 419, 433 (1995). This test does not require the defendant to establish that the outcome of his trial necessarily would have been different. Instead, a "reasonable probability" is a probability sufficient to undermine confidence in the outcome." *United States v. Bagley*, 473 U.S. at 682.

146) A reviewing court must evaluate the non-disclosed, favorable evidence to assess whether the cumulative weight of the evidence would have had an effect on the verdict. A reviewing court must assess the materiality of the withheld evidence to determine if confidence in the verdict was undermined. A reviewing court, however, may not merely rely on whether the state presented sufficient evidence in determining whether the defendant was prejudiced by the withholding of exculpatory or mitigating

evidence. Further, a *Brady* violation cannot be harmless error because the question of harm is subsumed into the reviewing court's materiality analysis.

147) The state's failure to disclose this material exculpatory and mitigating evidence violated Monroe's right to due process and denied him a fair trial in violation of the Fifth, Sixth, Eighth, and Fourteenth Amendments.

148 ) To the extent that trial counsel failed to more fully demand discovery and litigate the state's obligation to fully disclose all material exculpatory and mitigating evidence, counsel's performance fell far below the prevailing professional norms, thereby depriving Monroe of the effective assistance of counsel.

149 ) The merits decision of the Ohio courts on Monroe's claims was contrary to or an unreasonable application of clearly established federal law as stated by the Supreme Court of the United States or resulted in a decision that was based on an unreasonable determination of facts in light of the evidence presented in the state courts. 28 U.S.C. § 2254(D)[sic].

(Petition, Doc. No. 10, PageID 83-85.)   This is a purely boilerplate *Brady* habeas claim.   No mention whatsoever is made of DNA evidence or the DeVillers testimony.   In fact, the only allegation particular to the case is that defense counsel made motions for discovery which is, of course, irrelevant to the prosecutor's duty to disclose.

The Petition was filed March 27, 2007.   The Reply was filed more than five years later on May 18, 2012 (Doc. No. 76).   This is the first time any claim is made about DNA-related evidence not being disclosed or about the DeVillers testimony.   *Id.* at PageID 5524-5525.   The Warden objects that adding what amounts to a new claim in a reply/traverse is not proper under the Rules Governing § 2254 Cases (the "Habeas Rules") and is further barred by the statute of limitations.

Monroe responds:

This argument is a red herring.

> To be sure, Monroe is not amending his petition, but is instead presenting support for his discovery request by relying on instances in the state court record to further support his request. In short, there is no prior restraint which restricts Monroe in making an argument based on the record filed by Respondent.

(Reply, Doc. No. 79, PageID 5633-5634.)

Habeas Rule 2 provides in pertinent part

(c) Form.  The petition must

> (1)  specify all the grounds for relief available to the petitioner;

> (2)  state the facts supporting each ground;

In adopting the Habeas Rules in 1976, the Advisory Committee expressly noted that "In the past, petitions have frequently contained mere conclusions of law, unsupported by any facts.  Since it is the relationship of the facts to the claim asserted that is important, these petitions were obviously deficient."  Ground Five as pleaded in the Petition is the very model of pleading conclusions of law without pleading any supporting facts.  To allow what amounts to an amendment of the petition by adding the required allegations of fact in the reply/traverse would be to gut the fact pleading requirement of Rule 2.

To allow such an amendment in a case like this would also be to gut the statute of limitations.  Monroe admits he is "not amending his petition."  (Reply, PageID 5634).  Nor would he be permitted to do so.  Monroe asserts that his conviction became final on March 29, 2006 (Petition, Doc. No. 10, PageID 41), so that there were only one or two days left to run on the statute of limitations when he initially filed.  Obviously the statute of limitations has long since run.  Amendments to add the DNA and DeVillers claims would not relate back to the original filing date because "[a]n amended habeas petition ... does not relate back (and thereby escape

AEDPA's one-year time limit) when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth. *Mayle v. Felix,* 545 U.S. 644, 650 (2005). The original Petition sets forth in Ground Five only a conclusion of law – the State violated *Brady* – and no facts at all.

Because both *Brady* claims on which discovery is sought were not pleaded in the Petition, discovery on them is denied. The Magistrate Judge recognizes the additional objection made by Respondent that this Ground for Relief was not fairly presented to the state courts, but determines it need not reach that defense, given the foregoing analysis.

## Grounds Eight and Nine: Ineffective Assistance of Trial Counsel

In support of these Grounds for Relief, Petitioner wishes to depose trial attorneys Ronald Janes and Brian Rigg, mitigation specialist James Crates, and defense mental health expert Dr. Dennis Eshbaugh (Motion, Doc. No. 77, PageID 5599.)

The specific issues about which discovery is sought are

1. Counsels' failure to object to the DeVillers testimony on a constitutional basis, to wit, prosecutorial misconduct (Motion, Doc. No. 77, PageID 5600).

2. "[N]umerous failures to present mitigation evidence." *Id.* Specifically, funds were obtained to employ Dr. Dennis Eshbaugh as a mental health expert, but his testimony was not offered at sentencing. *Id.* at PageID 5601.

3. "[F]aulty explanation of the purpose of mitigation to Monroe." *Id.*

The Warden opposes discovery because these claims were decided on the merits in the state

courts and this Court's evaluation is therefore limited to the question whether the state court adjudication was contrary to or an objectively unreasonable application of clearly established Supreme Court precedent, citing *Cullen v. Pinholster,* 563 U.S. ___, 131 S.Ct. 1388 (2011). While *Pinholster* does not permit this Court to consider extra-record evidence in deciding the §2254(d)(1) question, it does not dictate the order in which that question must be considered in a habeas case[1] and, as Monroe points out, does not discuss habeas discovery at all. The deposition discovery of the trial attorneys is clearly relevant to the claims that they were ineffective. The Warden does not raise as to Grounds Eight and Nine the conclusory pleading objection made as to Ground Five and Monroe's pleading of these two Grounds is much more complete. This case was tried in 2002 and the likelihood that witnesses' memories will fade if discovery is further delayed is great. Even if the Court does not yet know whether it will be able to consider the evidence generated by the depositions, prudence in the preservation of evidence suggests strongly that the evidence be taken now so that it is not lost forever.

Accordingly, Monroe may depose his trial counsel, Mr. Crates, and Dr. Eshbaugh.


### Ground Ten:   Ineffective Assistance of Appellate Counsel


In support of this Ground for Relief, Petitioner wishes to depose his appellate counsel, Joseph Edwards and Todd Barstow, and subpoena their files. *Id.* at PageID 5604. In contrast again with the way Ground Five is pled, Ground Ten recites at some length the propositions of law which Monroe asserts his appellate counsel should have raised in the Ohio Supreme Court. The

---

1 The Court did deny Respondent's Motion for a Definite Statement which sought to require Petitioner to plead as to each claim for relief the particular portion of § 2254(d) under which he was proceeding (Doc. No. 62).

specific claims on which discovery is sought are set forth in the Motion at PageID 5605.

The Warden objects that the state courts decided this claim on the merits (Memo in Opp., Doc. No. 78, PageID 5619). For the reasons discussed as to Grounds Eight and Nine, this does not preclude discovery.

The Warden also objects that *Mapes v. Coyle*, 171 F.3d 408 (6th Cir. 1999), on which Monroe relies, cannot provide the basis for relief because it is not Supreme Court precedent. The Court is aware that a state court decision on the merits can be overturned only if it is contrary to or an objectively unreasonable application of Supreme Court precedent as set forth in the holdings of Supreme Court cases. In that regard the Sixth Circuit has held:

> In determining whether a state court decision is contrary to or an unreasonable application of clearly established Supreme Court precedent, a federal court may look only to the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state court decision. *Lockyer v. Andrade*, 538 U.S. 63, 71, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003); *Williams*, 529 U.S. at 412. The "clearly established federal law" is "the governing legal principle or principles set forth by the Supreme Court." *Lockyer*, 538 U.S. at 71-72. "[T]he 'lack of an explicit statement' of a particular rule by the Supreme Court 'is not determinative' of clearly established law, since 'the Court has made clear that its relevant precedents include not only bright-line rules but also the legal principles and standards flowing from precedent.'" *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir. 2005) (*quoting Taylor v. Withrow*, 288 F.3d 846, 852 (6th Cir. 2002)). The court may also look to lower courts of appeals' decisions to the extent they illuminate the analysis of Supreme Court holdings in determining whether a legal principle had been clearly established by the Supreme Court. *Landrum v. Mitchell*, 625 F.3d 905, 914 (6th Cir. 2010).

*Goodell v. Williams*, 643 F.3d 490 (6th Cir. 2011). In other words, although *Mapes* is not controlling, it is not necessarily irrelevant. The Court is well aware that the ABA Guidelines are not holdings of the Supreme Court.

Federal habeas discovery is more critical on claims of ineffective assistance of appellate counsel than on claims of ineffective assistance of trial counsel because Ohio provides no discovery mechanism whatever ancillary to an application to reopen under Ohio R. App. P. 26(B) or its Supreme Court analogue.

Monroe explains that his appellate counsel have declined to speak with habeas counsel in the absence of a waiver of attorney-client privilege. By law, filing a claim of ineffective assistance of counsel constitutes a waiver of that privilege as to communications about the claims of ineffective assistance of counsel made. *In re Lott*, 424 F.3d 446 (6th Cir. 2005); *Tasby v. United States*, 504 F.2d 332 (8th Cir. 1974); *Randall v. United States,* 314 F.2d 800 (10th Cir. 1963); *United States v. Ballard*, 779 F.2d 287 (5th Cir. 1986); *Laughner v. United States*, 373 F.2d 326 (5th Cir. 1967); *Crutchfield v. Wainwright*, 803 F.2d 1103 (11th Cir. 1986). The Court finds that Monroe has waived the attorney-client privilege as to all his claims of ineffective assistance of counsel, both trial and appeal.

Monroe's motion to depose his appellate attorneys and subpoena their files is granted.

### The Warden's Request for Reciprocal Discovery

The Warden requests that if the Court grants Monroe discovery on the ineffective assistance of counsel claims, it should grant reciprocal discovery to the Warden (Memo in Opp., Doc. No. 78, PageID 5621-5622). Monroe does not oppose that request except to note that his waiver of attorney-client communication privilege applies only to "materials and conversations related specifically to the ineffectiveness allegation[s]." (Reply, Doc. No. 79, PageID 5638.)

In addition to the discovery sought by Monroe, the Warden seeks to depose

post-conviction counsel David Stebbins and obtain his files "because Monroe claims his direct appeal attorneys failed to cooperate with his postconviction attorneys" (Memo in Opp., Doc. No. 78, PageID 5621). Monroe says he agrees for "a different reason" and also seeks to obtain whatever documentary or oral information direct appeal counsel provided to Mr. Stebbins. Neither counsel explains how Mr. Stebbins' files or testimony would be relevant to one of the claims made in the Petition. The request to depose David Stebbins and subpoena his files is denied without prejudice to its renewal after the other discovery permitted herein is conducted.

**Deadline**

The discovery allowed by this Order shall be completed no later than December 21, 2012.

September 21, 2012.

s/ *Michael R. Merz*
United States Magistrate Judge