# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION AT COLUMBUS

JONATHON D. MONROE,

       Petitioner,                         Case No. 2:07-cv-258

                                       Chief Judge Edmund A. Sargus, Jr.
     -vs-                                Magistrate Judge Michael R. Merz

MARK HOUK, Warden,
 Ohio State Penitentiary,

       Respondent.

---

## SUPPLEMENTAL MEMORANDUM OPINION ON PETITIONER'S SECOND MOTION TO STAY AND HOLD CASE IN ABEYANCE

---

This capital habeas corpus case is before the Court on Petitioner's Second Motion to Stay and Hold Case in Abeyance (ECF No. 167). The Magistrate Judge granted the Motion in part (the "Decision," ECF No. 177). Respondent filed Objections (ECF No. 180) to which Petitioner has responded (ECF No. 182). Petitioner, on the other hand, did not object to any part of the Decision adverse to his claims and those portions may be adopted without further analysis. Chief Judge Sargus recommitted the matter for a supplemental memorandum opinion analyzing the Objections and Response (ECF No. 181).

Petitioner seeks a stay so that he can present to the Ohio courts "new evidence and new claims which were only uncovered during discovery in this habeas case." (Motion, ECF No. 167, PageID 8241.) The claims sought to be exhausted are detailed in the Decision (ECF No. 177, PageID 8394-96).

The Decision read Monroe's Response to Respondent's Supplemental Brief as a

1

withdrawal of any request for stay to permit further presentation of Ground 10 to the Ohio courts and did not discuss Ground 10. Monroe did not object to that reading of his papers.

The Decision noted the amendments to the Petition allowed by Chief Judge Sargus and his overruling of Petitioner's Objections to sustaining Judge Watson's determination that Grounds for Relief One, Four, Six, Seven, and Eight (A) were barred by procedural default (ECF No. 177, PageID 8396-97).

**Objections**

The Warden begins his Objections with a general censure of this Court's remand practices:

> Capital petitioners in the District Court for the Southern District of Ohio have been permitted to waste judicial resources in conducting discovery on claims for which this Court can never consider the newly discovered information, and have been granted repeated trips back to state court to "exhaust" new "claims" and "evidence." Such delay is seldom permitted in the District Court for the Northern District of Ohio.

(Objections, ECF No. 180, PageID 8405.) The Court is not aware of any case in which a petitioner has been granted a "repeated trip" back to the state courts. No examples are given, either of repeated trips or of "correct" decisions by the Northern District.

The Warden asserts that in granting a stay and permitting Monroe to return to state court to exhaust new claims, "the Magistrate Judge failed to correctly apply the test for the appropriateness of a stay, and completely ignores binding Sixth Circuit case law." (Objections, ECF No. 180, PageID 8405.) The Magistrate Judge agrees with the Warden that, because the Decision concerns a non-dispositive pre-trial order, review of factual findings is for clear error

2

and the "contrary to law" standard applies to legal conclusions.

### Possibly Available State Court Remedies

The Warden objects that "[t]he Magistrate Judge erred as a matter of law when he implicitly found that Monroe had state court remedies available." (Objections, ECF No. 180, PageID 8407.) This is so because, the Warden claims, "the state courts will neither permit a motion for new trial, nor will they entertain a successive petition for post-conviction relief, because Monroe has been dilatory in raising his claims." *Id.*

The Warden points to evidence upon which the state courts could reasonably conclude that Monroe has been dilatory in raising new claims in the Ohio courts. He cites a number of filings Monroe has made pro se or through the Ohio Public Defender since 2010. *Id.* at PageID 8408. None of them were cited in the Warden's opposition to the Motion to Stay.

More fundamentally, the Warden asserts the state courts will certainly find Monroe has been too dilatory to be allowed to file a motion for new trial. Perhaps, but that is a decision for the state courts to make. Ohio recognizes no absolute time limit on filing a motion for leave to file a motion for new trial. The text of Ohio Crim. R. 33(B), which is unchanged since its adoption in 1973, sets no time limit on filing a motion for leave to file a delayed motion for new trial. In *State v. Pinkerman*, 88 Ohio App. 3d 158 (4th Dist. 1993), the court refused to infer any time limit on such a motion. In *State v. Davis*, 131 Ohio St. 3d 1, 6-7 (2011), the Ohio Supreme Court noted the time limits in the Rule and held Crim.R. 33 does not otherwise limit the time for filing a motion for a new trial based on newly discovered evidence. *Id.* at ¶ 27.

As a matter of federalism, this Court should not be deciding factual questions that will underlie a state court decision on whether Monroe should be allowed to file a motion for new trial. The Decision does not purport to decide that Monroe has been diligent  But if the decision on that fact question is so obvious, it should not detain the state court for long. In any event, the Warden has cited no law which absolutely precludes Monroe from filing for a new trial. If there were such law, the Magistrate Judge would concede he had acted contrary to law in granting the stay. But there is not. Dilatoriness is a question of fact which, in this Court's experience, the Ohio courts decide on a case-by-case basis. They should be allowed to do so here.

The Warden's case is stronger with respect to a successive petition for post-conviction relief (See PageID 8408-10), but the logic is the same. It is for the state courts to decide in the first instance if Monroe's evidence is so strong that he has shown "by clear and convincing evidence" that no reasonable juror would have convicted him and that he was "unavoidably prevented from discovery of the facts." He must make that threshold showing before he can file a successive petition under Ohio Revised Code § 2953.23. But whether he has made that showing is a question of state law, not federal law.

Federalism is a time-consuming project. For example, before the late Chief Justice Thomas Moyer and District Judge Walter Rice of this Court collaborated to have the Uniform Certification of State Law Questions statute made a part of the Ohio rules, litigants with a controlling state law question in a federal case would have to wait until that question had been litigated in a separate case. See, e.g., *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943); *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 814 (1976). If the state courts find the absence of a remedy as obvious as the Warden does, they can quickly decide those threshold questions and return to the case to this Court without having intruded unnecessarily in

their case. The State of course has an interest in achieving finality in this case and carrying out the sentence imposed on Monroe. But as of the date of this Opinion, the State has execution dates set through April 21, 2022, and Monroe is not one of those scheduled. There is thus substantial time available to accommodate the federalism concerns mentioned here and any execution date likely to be set for Monroe.

**Merits of the Claims to be Presented in State Court**

All parties agree that the governing standard for granting a stay is enunciated in *Rhines v. Weber*, 544 U.S. 269, 277-278 (2005). The Warden notes that, for *Rhines* to be applied correctly, the claims to be heard in the state court cannot be "plainly meritless." (ECF No. 180, PageID 8410.) In deciding the claims in question were not plainly meritless, the Magistrate Judge relied on the Chief Judge's having allowed the Petition to be amended, including, in some cases, amendments the Magistrate Judge would not have allowed.

The Warden objects that there was no finding of possible merit in the allowance of the amendments, but the focus was entirely on timeliness. In ruling on Petitioner's Objections to the Decision and Order on Monroe's Motion to Amend, Chief Judge Sargus adopted in full the Magistrate Judge's discussion of the law governing motions to amend habeas corpus petitions (ECF No. 158). That discussion centered on the leading case, *Foman v. Davis*, 371 U.S. 178 (1962), which includes considering the possible merits of a proposed amendment. Thus the Magistrate Judge's inference that the Chief Judge had considered the merits of the proposed amendments, at least at the level of plausibility, was not an unreasonable one. The Chief Judge

remains completely free, on review of this Memorandum Opinion, to reject any of the amendments he allowed as pleading "plainly meritless" claims.

**Impact of *Carter v. Mitchell*, 829 F.3d 455 (6th Cir. 2016.**

The Warden alleges the Decision "completely fails to recognize the binding authority of *Carter v. Mitchell*, 829 F.3d 455 (6th Cir. 2016) (Objections, ECF No. 180, PageID 8412).

The undersigned was pleased with the published *Carter* because it adopted as circuit precedent the distinction the undersigned had made between unexhausted evidence and unexhausted claims. The concept of "unexhausted evidence" is unknown to habeas corpus jurisprudence. *Carter v. Mitchell*, 2013 U.S. Dist. LEXIS 62231, * 4 (S.D. Ohio May 1, 2013)(Merz, M.J.). As this Court explained in applying *Carter*,

> To extend *Rhines* to encompass "unexhausted evidence" would provide virtually limitless opportunities to delay finality in habeas litigation. Particularly with respect to mitigation evidence, the ABA Guidelines suggest gathering as much biographical information as possible. *Bobby v. Van Hook*, 558 U.S. 4, 7-8, 130 S. Ct. 13, 175 L. Ed. 2d 255 (2009). Virtually anything thus gathered may be presented in mitigation if arguably relevant. *Buchanan v. Angelone*, 522 U.S. 269, 276, 118 S. Ct. 757, 139 L. Ed. 2d 702 (1998); *Lockett v. Ohio*, 438 U.S. 586, 98 S. Ct. 954, 57 L. Ed. 2d 973 (1978); *Eddings v. Oklahoma*, 455 U.S. 104, 102 S. Ct. 869, 71 L. Ed. 2d 1 (1982). Of course the time within which to gather mitigating evidence before trial is limited, but the time within which to gather such evidence post-conviction is limited only by the natural life of the defendant. Assuming diligence in searching for such evidence, a doctrine of "unexhausted evidence" would permit delay of finality in habeas for extended periods and perhaps on a repeated basis.

*Waddy v. Robinson*, 2013 U.S. Dist. LEXIS 65092, *quoting Carter* at *5-6. This Court thus has no interest in undermining *Carter*.

Although *Carter* is not expressly discussed in the Decision, the Magistrate Judge noted the anomaly created by *Cullen v. Pinholster*, 563 U.S. 170 (2011):

> Because of the Supreme Court's stringent limitation on evidentiary hearings in habeas corpus adopted in *Cullen v. Pinholster*, 563 U.S. 170 (2011), Petitioner is unable to present the results of his habeas discovery directly to this Court, but must present or attempt to present them to the state courts first. *Pinholster* thus has the unintended consequence of further delaying the finality of habeas proceedings by allowing a return trip to the state courts.

(Decision, ECF No. 177, PageID 8398.) The AEDPA neither eliminated nor amended the discovery portion of the Rules Governing § 2254 Cases but does, as interpreted in *Pinholster*, prevent presentation of the results directly to the habeas court. It would be faster to present that evidence directly to the federal court, but *Pinholster* precludes that. While habeas jurisprudence does not recognize a stay to present "unexhausted" evidence just because it has never been presented to the state courts, there must be a mechanism to present new material evidence discovered in federal habeas. If it cannot be an evidentiary hearing in federal court, the only alternative, and the one best respecting federalism concerns, is to give the state courts the opportunity to her that evidence. While this is not a completely satisfactory theoretical resolution of the tension between Habeas Rule 6 and *Pinholster*, the Warden has not shown it is contrary to law.

**Conclusion**

Based on the foregoing analysis, the Warden's Objections should be OVERRULED.

September 15, 2017.

s/ *Michael R. Merz*  
United States Magistrate Judge